UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────

TERRENCE T. LAFAIVE,

        Plaintiff,

   v.                                   Case No. 21-cv-0486-bhl

CITY OF WAUKESHA, et al.,

        Defendants.

───────────────────────────────────────────────

## DECISION AND ORDER

Plaintiff Terrence LaFaive, who is currently serving a state prison sentence at Stanley Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On November 29, 2021, LaFaive filed a motion for leave to amend his complaint. Dkt. No. 32. Under Rule 15 of the Federal Rules of Civil Procedure, a court "should freely give leave to amend when justice so requires." LaFaive asserts that he learned new facts during discovery that he believes support additional claims. The Court will grant LaFaive's motion and screen the second amended complaint. *See* 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

LaFaive is by now familiar with the Court's duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The Court must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

LaFaive alleges that, on March 9, 2019, he was a backseat passenger in a vehicle stopped by Waukesha County police officers for "improper stop and illegal window tint." Officer Manders requested that the driver and two passengers give him their IDs. While checking the IDs, other officers arrived on the scene. Manders noted that the driver appeared to be intoxicated. LaFaive explains that "[a]t that point the traffic stop had become an OWI investigation centered on [the driver]." One of the officers observed that LaFaive had a criminal history of dealing Xanax pills. Manders allegedly called for a canine unit to check the car for contraband "because Mr. LaFaive was 'on parole.'" While officers performed a field sobriety test on the driver, the canine unit arrived. The canine unit arrived about 21 minutes after the start of the traffic stop. Dkt. No. 32-1 at 4-5.

According to LaFaive, the driver failed the field sobriety test and was placed in the backseat of a police vehicle. The two passengers were told to exit the vehicle, and LaFaive was told he could sit on the hood of a police vehicle. LaFaive asserts that, when he sat on the hood, he blocked the dash camera in the police vehicle. LaFaive asserts that the sniff search began and that the dog, who was trained to detect methamphetamines, cocaine, marijuana, and heroin, did not signal. However, the dog's handler noted that the dog had detected something. Two officers then conducted a hand search of the car, which took about 10 minutes, and found about 390 pills in a bag under the front seat. Despite the driver asserting that the pills were his, LaFaive was arrested on a parole hold. Dkt. No. 32-1 at 5-7.

Once at the police station, Manders used www.drugs.com to visually confirm that the pills were Xanax. There was no additional testing of the pills at that time. In addition to the parole hold, Manders initiated criminal charges against LaFaive. LaFaive explains that he was in the Waukesha County Jail from March 9, 2019 until August 1, 2019 for both a pending revocation

2

hearing and criminal charges. LaFaive asserts that, on May 8, 2019, the administrative law judge decided not to revoke his parole because the driver had asserted that the pills were his. Shortly thereafter, Assistant District Attorney Abby Nicholie moved to increase LaFaive's bond from $2,500 to $5,000. LaFaive could not afford to post bond. Dkt. No. 32-1 at 8.

On June 6, 2019, the seized pills were delivered to the crime lab for analysis. The results were allegedly completed on July 25, 2019. According to LaFaive, the toxicology report determined that the pills were not Xanax or any other controlled substance. The results were allegedly delivered on July 29, 2019, just prior to the scheduled start of trial. ADA Nicholie moved to dismiss the charges, and LaFaive was released from custody on August 1, 2019. LaFaive asserts that "[o]n information and belief it is the DA Defendants (Defendants D.A.'s Office, Opper, and Nicholie) that would have to order that the pills be sent to [the] crime lab for testing." Dkt. No. 32-1 at 9-10.

### THE COURT'S ANALYSIS

### 1. Officers and the City and County of Waukesha

LaFaive asserts that officers violated the Fourth Amendment because there was no reasonable suspicion to justify a sniff or hand search of the vehicle and because the length of his detention was unreasonable. LaFaive argues that officers conducted the searches because he was on parole, but other circumstances also justified the searches. According to LaFaive, officers believed the driver was under the influence, conducted a field sobriety test, and then, after the driver failed the field sobriety test, placed him in the back of an officer's vehicle, presumably after arresting him.[1] The Supreme Court has explained that officers may search a vehicle incident to a

---

[1] It is not clear whether the driver was formally arrested or placed under a custodial arrest, but the distinction is not material to the Court's analysis. "A suspect is under custodial arrest when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003).

3

lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 344 (2009) (citations omitted). Because the driver was taken into police custody after failing the field sobriety test, "there was probable cause to search the vehicle for evidence of drugs or other intoxicating agents." *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). Given these circumstances, the officers' search of the vehicle was reasonable under the Fourth Amendment, so LaFaive fails to state a claim on this basis.

LaFaive also fails to state a Fourth Amendment claim based on the duration of the stop. He asserts that officers' decision to search the vehicle unreasonably prolonged the stop. "An officer conducting a valid traffic stop can detain the occupants of the vehicle long enough to accomplish the purpose of the stop." *U.S. v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005). LaFaive explains that although the vehicle was initially stopped for illegally tinted windows and a minor traffic violation, the purpose of the stop changed once an officer noted that the driver appeared to be under the influence. LaFaive asserts that "[a]t that point the traffic stop had become an OWI investigation centered on [the driver]." But officers were permitted to detain *all* occupants pending completion of their investigation, which had evolved following the initial stop. *See United States v. Chang*, 999 F.3d 1059, 1067 (7th Cir. 2021) (explaining that officers do not need independent cause to believe that occupants of a vehicle are involved in criminal activity to lawfully detain them for an investigatory stop).

LaFaive also alleges that the canine team arrived about 20 minutes after the initial stop while the field sobriety test was ongoing and that the vehicle was searched after the driver failed the sobriety test and was placed in the back of a police vehicle. But, again, given that the purpose of the stop evolved as the officers obtained additional information, the Court cannot reasonably infer that LaFaive's detention was unreasonably prolonged. *See United States v. Reedy*, 989 F.3d

4

548, 554 (7th Cir. 2021) (finding that a passage of 90 minutes between initial stop and arrest did not violate the Fourth Amendment because "[n]othing about the timeline or sequence of events suggest[ed] delay by the police").

Nor does LaFaive state a Fourth Amendment claim in connection with his arrest. The Seventh Circuit has explained that "an officer may make a warrantless arrest consistent with the Fourth Amendment if there is probable cause to believe that a crime has been committed." *United States v. Haldorson*, 941 F.3d 284, 290 (7th Cir. 2019) (citations omitted). "Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2008) (quotations omitted).

LaFaive was arrested after a bag containing pills and powder was found under the front passenger seat. An officer noted that LaFaive was on parole and had a history of dealing Xanax pills. At the police station, the officer used the website www.drugs.com to visually confirm that the pills were Xanax. These facts were sufficient to give officers probable cause to arrest LaFaive. "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). LaFaive makes no allegations suggesting that it was unreasonable for the officer to believe that the pills were what they appeared to be. Nor does he allege any facts suggesting that the website www.drugs.com, which is routinely consulted by officers and the courts, is an unreliable source for assisting officers in identifying pills. *See, e.g., Burt v. Uchtman*, 422 F.3d 557, n. 1-4 (7th Cir. 2005) (citing www.drugs.com); *Collins v. Al-*

*Shami*, 851 F.3d 727, 728-29 (7th Cir. 2017) (same); *Lofgren v. Wojowski*, No. 14-C-7869, 2016 WL 5477527, at *1 (N.D. Ill. Sept. 29, 2016) (officer used www.drugs.com "to identify the pills as controlled narcotics"); *Bogan v. German*, No. 14-C-7849, 2017 WL 4339797, at *2 (N.D. Ill. Sept. 29, 2017) (same).

LaFaive highlights that the driver informed officers that the pills belonged to him. But given that the driver had no criminal history and that LaFaive was on parole for dealing the same type of pills suspected to be in the car, it was not unreasonable for officers to ignore LaFaive's assertions of innocence. *See Beauchamp v. City of Nolesville, Ind.*, 320 F.3d 733, 744 (7th Cir. 2003) (noting that "criminal suspects frequently protest their innocence," so "once an officer learns sufficiently trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate"). LaFaive fails to state a Fourth Amendment claim on this basis.

Finally, because LaFaive fails to state a claim against any officer, he also fails to state a claim against the City of Waukesha based on allegations that it failed to adequately train its officers. As the Supreme Court has explained, where there is an overlap in the factual basis for the claims against the officers and the municipality, if a person has suffered no constitutional injury at the hands of individual officers, damages against a municipality based on the actions of those officers are not available. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015).

To the extent LaFaive seeks injunctive relief against the City or County, his claim also fails. LaFaive concludes that the police dogs were not adequately trained, but his allegations do not support such a conclusion. According to LaFaive, *extra* training was provided to the dog who performed the sniff search. Further, it is not even clear if the dog erroneously signaled. LaFaive

asserts that the dog did not signal and that his handler falsely claimed that he did. LaFaive cannot state a claim for injunctive relief for failing to train a dog who acted in accordance with his training. And, in any event, although LaFaive asserts that he plans to return to Waukesha upon his release, he fails to show that "there is a real and immediate threat of repeated injury," a showing that is necessary to state a claim for injective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). As the Supreme Court has explained, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (citations omitted).

**2. Abby Nicholie, Susan Opper, District Attorney's Office, and Doe Clerical Staff**

LaFaive fails to state a claim against Abby Nicholie in connection with her decisions to seek an increase to his bond and to delay requesting that the pills found in the vehicle be tested. "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016). Because advocating for a higher bail was associated with the judicial phase of the prosecution against LaFaive, Nicholie is immune from civil suit on that basis. *See Wooley v. Cervantes*, No. 21-cv-877-NJR, 2021 WL 5834229, at *1 (S.D. Ill. Dec. 9, 2021).

LaFaive also fails to state a claim based on allegations that Nicholie failed to immediately request that the pills be tested and that she waited a couple days after the results were available to seek dismissal of the charges. The Seventh Circuit has repeatedly "rejected the argument that a prosecutor must dismiss charges as soon as he or she obtains exculpatory evidence." *Walker v. Gasparini*, 2000 WL 133837, at *1, 210 F.3d 377 (Table) (7th Cir. Feb. 2, 2000) (citing *Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994)). The appellate court explained that, once a probable cause determination has been made (as was here), a prosecutor is not required to dismiss a case

before trial on the basis of exculpatory evidence. Given that the Constitution does not require a prosecutor who has exculpatory evidence to dismiss a case before trial, LaFaive suffered no harm from Nicholie's alleged delay in discovering that the pills were not Xanax as reasonably suspected. In other words, even if Nicholie had obtained the results earlier, the Constitution did not require that she seek dismissal of the charges prior to trial based on those results. *See also Garcia*, 24 F.3d at 970 ("As we have consistently held, once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.").

Nor may LaFaive proceed against the Waukesha County District Attorney Office or Susan Opper, the District Attorney for Waukesha County. "The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities." *Garcia*, 24 F.3d at 969. "As of January 1, 1990, all district attorneys became state employees." *Assoc. of State Prosecutors v. Milwaukee County*, 1999 Wis. 2d 549, 543 (1996). Thus, because Opper was acting in her official capacity as Waukesha County District Attorney, LaFaive cannot recover money damages from her or her office.

Finally, LaFaive fails to state a claim against the unidentified clerical staff who allegedly waited several days to notify Nicholie that the pills were not a controlled substance as suspected. LaFaive alleges no facts to support an inference that the two- to three-day period between the completion of the test and Nicholie receiving the results was objectively unreasonable.

As the Court observed in its original screening order, it is understandable that LaFaive is angry about spending months in jail on charges that were ultimately dismissed. But, "[f]ederal courts cannot reach out to award remedies when the Constitution or laws of the United States do

8

not support a cause of action." *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75 (1992). Because the allegations in LaFaive's second amended complaint fail to state a claim, this case must be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that LaFaive's motion for leave to amend his complaint (Dkt. No. 32) is **GRANTED**. The clerk's office shall docket the proposed second amended complaint (Dkt. No. 32-1) as the operative complaint.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** because LaFaive fails to state a claim against the City of Waukesha, Cody Manders, Miles Jobke, William Paszkiewicz, Terrence Fletcher, Doe Clerical Assistants, County of Waukesha, Kurt Thompson, Canine Justice, Doe Canine Trainers, and Abby Nicholie and because the Waukesha County District Attorney's Office, Susan Opper, and Abby Nicholie are immune from liability.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 3, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.